# In the United States Court of Federal Claims

No. 99-537V

(Filed Under Seal:  September 24, 2008)
_____

| | |
|---|---|
| BRUCE THOMAS SAVIN, | * |
| a minor, by his mother and natural | *   Vaccine Act; Petition to review award of |
| guardian, LAURA SAVIN, | *   attorneys' fees and costs; Deficiencies in |
| | *   billing records – mixed and belated entries; |
| Petitioners, | *   Impact of repeated problems with fee requests; |
| | *   Special master may reduce or eliminate fee |
| v. | *   entries for which no objection has been |
| | *   proposed; Special Master decision affirmed. |
| SECRETARY OF HEATH AND HUMAN | * |
| SERVICES, | * |
| | * |
| Respondent. | * |

_____

## ORDER ON PETITION FOR REVIEW

_____

*Clifford J. Shoemaker, Shoemaker & Associates,* Vienna, Virginia, for petitioners.

*Alexis B. Babcock,* Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent, with whom was *Acting Assistant Attorney General Gregory G. Katsas.*

**ALLEGRA, Judge:**

Bruce Thomas Savin, by his mother, seeks review of a decision awarding him less than the amount of attorneys' fees and costs claimed in this vaccine case.  For the reasons that follow, the court affirms the award.

I.

On July 29, 1999, attorney Clifford J. Shoemaker filed a petition for compensation on behalf of Bruce Thomas Savin (by his mother) under the provisions of the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. §§ 300aa-1 to 300aa-34.  The petition alleges that Bruce suffered adverse reactions as a result of vaccinations he received on November 10, 1994.

On July 2, 2007, petitioners requested that the Special Master grant judgment on the existing record, as they were unable to "find an expert to support causation in [their] case." On July 3, 2007, the Special Master issued a decision denying compensation. Judgment was entered on August 13, 2007, and petitioners filed an election to file a civil action on August 14, 2007. Pursuant to Vaccine Rule 13, any petition for attorneys' fees and costs, pursuant to 42 U.S.C. § 300aa-15(e), was due on February 13, 2008. On February 18, 2008, petitioners filed an untimely motion for enlargement of time to file for attorneys' fees and costs, citing problems with their counsel's computers. Although the Special Master expressed doubts about this motion, she noted that it was unopposed and ultimately granted it. On February 20, 2008, petitioners filed their motion for attorneys' fees and costs, seeking a total of $36,178.98. On March 5, 2008, respondent filed an opposition to certain items contained in the fees and costs application.

On April 22, 2008, the Special Master issued a decision awarding petitioners $30,691.48 for attorneys' fees and costs – $5,487.50 less than had been requested. As to fees, the Special Master rejected or reduced ten of the billing entries submitted by petitioners, even though they were not opposed by respondent. The entries rejected or reduced included: (i) two entries reduced for work done over the "last two weeks"; (ii) one entry that duplicated another entry on the same day; (iii) entries for reviewing a notice of appearance and filing a fee application; (iv) an entry for 5.0 hours that lumped several tasks into one listing and overlapped with additional entries from that day; (v) a $30 entry to "review payment of [a] filing fee;" and (vi) an entry of $12.50 for a meeting on medical literature and recent decisions. Sustaining objections made by respondent, the Special Master also refused to award petitioners all the costs they claimed, in particular reducing the rates and hours sought with respect to services provided by Dr. Mark A. Greenspan.

On May 22, 2008, petitioners filed a motion for review, claiming, *inter alia*, that the Special Master had acted in an arbitrary and capricious fashion in denying or reducing fee items to which respondent had not objected and particularly in doing so without requesting additional evidence from petitioners. Petitioners likewise claim that the Special Master acted in an arbitrary and capricious manner in reducing the recoverable costs associated with Dr. Greenspan's work. On June 23, 2008, respondent filed a memorandum urging the court to sustain the Special Master's findings. On August 28, 2008, the court heard oral argument from the parties on this matter.

II.

A.

This court has jurisdiction under the Vaccine Act to review a special master's decision upon the timely request of either party. *See* 42 U.S.C. § 300aa-12(e)(1)-(2). On review, the court may: "(A) uphold the findings of fact and conclusions of law . . . ; (B) set aside any findings of fact or conclusion of law . . . found to be arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law . . . , or; (C) remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2)(A)-(C). Findings of fact and discretionary rulings are reviewed under an "arbitrary and capricious" standard, while legal conclusions are reviewed *de novo*. *Munn v. Sec'y of HHS*, 970 F.2d 863, 870 n. 10 (Fed. Cir. 1992); *see also Lampe v. Sec'y of HHS*, 219 F.3d 1357, 1360 (Fed. Cir. 2000); *Saunders v. Sec'y of HHS*, 25 F.3d 1031, 1033 (Fed. Cir. 1994); *Avera v. Sec'y of HHS*, 75 Fed. Cl. 400, 402 (2007).

The arbitrary and capricious prong of this standard recognizes the possibility of a zone of acceptable results and requires only that the final decision reached by the special master be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). The Supreme Court burnished these twin requirements in *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), identifying four grounds upon which a holding of arbitrary and capricious action could be based:

> [I]f the [court] has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of [court] expertise.

*Id*. at 43; *see also OMV Med., Inc. v. United States*, 219 F.3d 1337, 1343 (Fed. Cir. 2000); *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. at 705, 709 (2006). Here, the court must determine whether the Special Master acted in an arbitrary capricious fashion in reducing petitioners' claim for attorneys' fees and costs. In fact, she did not.

## B.

The Vaccine Act allows recovery of "reasonable attorneys' fees, and other costs." 42 U.S.C. §§ 300aa-15(e)(1)(A)-(B). The "reasonableness" requirement applies not only to attorneys' fees, but also to costs. *Guy v. Sec'y of HHS* 38 Fed. Cl. 403, 405 (1997); *Perreira v. Sec' of HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Determining reasonableness is within the purview of the special master, who must adjudge, *inter alia*, whether any of the hours claimed are "'excessive, redundant, or otherwise unnecessary.'" *Saxton v. Sec'y of HHS*, 3 F.3d at 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). Affording the special master leeway in this regard is "'appropriate in view of the [special master's] superior understanding of the litigation.'" *Id.* (quoting *Hensley*, 461 U.S. at 437); *see also Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990). In exercising that discretion, special masters may consider their prior experience in reviewing fee applications and even dealing with the specific attorney involved. *See Saxton*, 3 F.3d at 1519 (sustaining the special master's decision to reduce the amount requested based upon the observation that the attorney involved had typically billed far more hours than other similarly-situated firms).

In the case *sub judice*, the Special Master reduced various fees and costs requested by petitioners.  In several instances, petitioners have not offered even a *prima facie* case for overturning these determinations – for instance, they have supplied no evidence that the Special Master abused her discretion in relying on her experience to reduce the hourly rates and hours billed by petitioners' consultant.  Indeed, on most of the counts challenged, petitioners offer little more than mere disagreements with the Special Master's findings of reasonableness.  "Such naked claims," this court has stated in analogous circumstances, "by all appearances unsupported by anything in the record, fall far short of meeting the heavy burden of demonstrating that these findings were the product of an irrational process and hence arbitrary and capricious." *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 660 (2002), *aff'd*, 56 Fed. Appx. 474 (Fed. Cir. 2003).

Nonetheless, one argument raised by petitioners bears further discussion – that the Special Master abused her discretion in reducing fee items that were not challenged by respondent.  Invoking notions of due process, petitioners' counsel asseverates that, before reducing or eliminating these unchallenged items, the Special Master should have afforded him an opportunity to explain his original filing, so as to demonstrate that the items in question were reasonable.  Such an opportunity was particularly compelled, he claims, because for some of the items in question, the Special Master lacked any factual or experiential basis upon which to predicate her findings.  By way of example, he cites the Special Master's decision to reduce the time billed as preparation for a meeting between counsel and Dr. Joseph Bellanti, asserting that the Special Master could not possibly have known how much time was reasonably necessary to prepare for this meeting.  But, these claims do not withstand scrutiny.

For one thing, in arguing that the Special Master should not have reduced or eliminated these items, petitioners' counsel ostensibly ignores the fact that the decision here was predicated, in part, on deficiencies in counsel's own billing records.  Regarding such billings, the Vaccine Guidelines advise counsel to –

> maintain detailed contemporaneous records of time and funds expended under the program.  [The fee request should include] contemporaneous time records that indicate the date and specific character of the service performed, the number of hours (or fraction thereof) expended for each service, and the name of the person providing such service.  Each task should have its own line entry indicating the amount of time spent on that task.  Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request.

These guidelines reflect the accumulated wisdom of numerous decisions emphasizing that fee records must be specific,[1] avoid "mixed entries" that lump together several activities,[2] and

---

[1]  *See, e.g.*, *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (affirming reduction of hours where "several entries contain[ed] only gauzy generalities" too nebulous to allow the opposing party to dispute their accuracy or reasonableness); *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989) (confirming that the district court properly excluded hours with "vague description[s] such as legal issues," "conference re all aspects," and "call re status"); *Tomazzoli*

represent contemporaneous entries.[3]  Yet, contrary to this guidance, the billing entries in question lacked specificity, lumped together various activities into single entries for which multiple hours were billed, and, in some instances, were obviously not entered contemporaneously.  For example, on March 22, 2007, counsel billed "5.00 hours" to "work on pleadings to file today – report, SOL issue, etc.; [phone call] with client; numerous [phone calls] with Dr. Greenspan, meeting with Dr. Bellanti."  He thereby lumped together at least five events under a single heading, each of which should have been separately accounted for using counsel's normal tenth-of-an-hour billing convention.  In two other instances, petitioners' bills listed entries on particular days that plainly were not contemporaneous, as they referred to work accomplished over two weeks.  These defects constituted an independent basis for reducing the hours claimed.  Moreover, it is clear that the Special Master had every right to insist upon receiving accurate bills in the first instance and was not obliged to offer petitioners' counsel a second chance to do what he should have done *ab initio*.  As this court recently stated, "the request for fees must be complete when submitted."  *Duncan v. Sec'y of HHS*, 2008 WL 3895488 at *1 (Fed. Cl. Aug. 4, 2008).

Any claims by petitioners' counsel that he was blind-sided here have a decidedly hollow ring.  At oral argument, counsel dramatically claimed that the problems he was experiencing with his fee requests were of recent vintage – that he "didn't have a problem in the past," that the reductions were occurring "all of sudden," and that if the disputes continued, he reluctantly

---

*v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) (affirming reduction in hours where plaintiff listed hours spent on "research" without greater specificity).

   [2]  *Domegan v. Ponte,* 972 F.2d 401, 425 (1st Cir. 1992), *vacated and remanded on other grounds*, 507 U.S. 956 (1993) (disallowing entries that combined compensable and non-compensable services or that listed together services to be compensated at different rates); *In re Meese*, 907 F.2d 1192, 1203-04 (D.C. Cir. 1990) (reducing the award by ten percent because numerous time records made no mention of the subject matter of the work performed and included excess fees for business meals, supplies and overtime).

   [3]  *See, e.g.*, *McDonald v. Pension Plan*, 450 F.3d 91, 96 (2d Cir. 2006) ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records."); *Cadena v. Pacesitter* Corp., 224 F.3d 1203, 1215 (10th Cir. 2000) (""[I]f [prevailing parties] intend to seek attorney's fees . . . [their attorneys] must keep meticulous, contemporaneous time records[.]"); *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000), *cert. denied*, 531 U.S. 1127 (2001) ("[I]t is within a district court's power to reduce a fee award because the petition was not supported by contemporaneous time records."); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (disallowing entries that failed to identify the subject of a meeting, conference, or phone call and requiring contemporaneous records proving the reasonableness of hours and rates); *Grendel's Den v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984) ("in cases involving fee applications. . . the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award, or in egregious cases, disallowance").

would be forced into satellite litigation.  But, a review of the court's docket belies these claims.
In fact, from 1997, until the Special Master issued her order in this case on April 22, 2008, **seven**
different special masters reduced fee and cost requests filed by petitioners' counsel in at least
**fourteen** different cases.[4]  Although the majority of these disallowances occurred over the last
three years, that fact hardly offers petitioners' counsel any solace, for  the wide majority of the
billing entries at issue were logged during that very same time period.  Accordingly, at the time
he was billing the items at issue here, petitioners' counsel was already on notice that his prior
billing practices were inadequate.

Lastly, the court cannot subscribe to the notion, heavily advanced by petitioners, that the
Special Master was compelled to don blinders to the state of the billings here, as well as the past
performance of petitioners' counsel, because defendant did not pose objections to the items in
question.  *Per contra*.  The Vaccine Act compels each special master to determine independently
whether a particular request is reasonable.  This obligation is not suspended – nor the sound
discretion and common sense that underlie it rendered inoperable – merely because respondent
failed to object to a particular fee item.  To rule otherwise would lead to untenable results.

---

[4]   *See Rydzewski v. Sec'y of HHS*, No. 99-571V, 2008 WL 382930 (Fed. Cl. Spec. Mstr.
Jan. 29, 2008) (denying compensation for failure to prove receipt of vaccine); *Hamrick v. Sec'y
of HHS*, No. 99-683V, 2007 WL 4793152 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) (making downward
adjustments for excess time billed); *Turner v. Sec'y of HHS*, No. 99-544V, 2007 WL 4410030
(Fed. Cl. Spec. Mstr. Nov. 30, 2007) (unreasonableness of duplicative billing entries); *Kooi v.
Sec'y of HHS*, No. 05-438V, 2007 WL 5161800 (Fed. Cl. Spec. Mstr. Nov. 21, 2007) (denying
compensation for legal services provided by client's spouse); *Turner v. Sec'y of HHS*, No.
99-544V, 2007 WL 5180524 (Fed. Cl. Spec. Mstr. Aug. 31, 2007) (unreasonableness of
duplicative billing entries); *Melbourne v. Sec'y of HHS*, No. 99-694V, 2007 WL 2020084 (Fed.
Cl. Spec. Mstr. June 25, 2007) (excessive, inaccurate, and egregious billing judgment); *Schrum v.
Sec'y of HHS*, No. 04-210V, 2007 WL 1772056 (Fed. Cl. Spec. Mstr. May 31, 2007)
(unreasonable rate and hours of medical consultant and fees); *Rydzewski v. Sec'y of HHS*, No.
99-571V, 2007 WL 949759 (Fed. Cl. Spec. Mstr. Mar. 12, 2007) (denying compensation for
failure to prove receipt of vaccine); *Jeffries v. Sec'y of HHS*, No. 99-670V, 2006 WL 3903710
(Fed. Cl. Spec. Mstr. Dec. 15, 2006) (rejecting "vague block entries" and undocumented costs);
*Desmore v. Sec'y of HHS*, No. 99-588V, 2006 WL 5668063 (Fed. Cl. Spec. Mstr. Aug. 14, 2006)
(reducing fee by $10,000 for vague and excessive hours); *Stott v. Sec'y of HHS*, No. 02-192V,
2006 WL 2457404 (Fed. Cl. Spec. Mstr. July 31, 2006) (excessive hours and use of multiple
doctors); *Ray v. Sec'y of HHS*, No. 04-184V, 2006 WL 1006587 (Fed. Cl. Spec. Mstr. Mar. 30,
2006) (excess hours, rates, and duplication of efforts); *Britton v. Sec'y of HHS*, No. 02-0094V,
2005 WL 6115366 (Fed. Cl. Spec. Mstr. July 11, 2005) (excess hours charged); *Brown v. Sec'y
of HHS*, No. 99-539V, 2005 WL 1026713 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (denying
compensation because there were no records to support the claim); *Beatty v. Sec'y of HHS*, No.
98-911V, 2003 WL 21439671 (Fed. Cl. Spec. Mstr. Apr. 22, 2003) (excess hours and many
vague "review" entries); *Farnsworth v. Sec'y of HHS*, No. 90-2049V, 1997 WL 739489 (Fed. Cl.
Spec. Mstr. Nov. 13, 1997) (excess rates); *Robertson v. Sec'y of HHS*, No. 95-187V, 1997 WL
338601 (Fed. Cl. Spec. Mstr. June 4, 1997) (excess rates).

Would, for example, a special master be powerless to strike a $5,000 charge for a two-page extension motion simply because no objection to this fee was lodged?  Logic and experience – not to mention the statute in question – suggest not.

In arguing to the contrary, petitioners rely on *Bell v. United Princeton Props*., 884 F.2d 713 (3d Cir. 1989).  While that case states that "a judge may not *sua sponte* reduce a request for attorneys' fees," *id.* at 719, it relies, for that proposition, on *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1983), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986).  This is notable because in the latter case, the Third Circuit sustained the district court's reduction of an **unopposed** fee request to the extent that reduction was based upon the court's personal knowledge of certain proceedings.  *Id.* at 265-66.  It thus appears that *Bell* may be read as merely indicating that a court may not *sua sponte* reduce a fee request if it lacks any factual or experiential foundation upon which to do so.  That, of course, is not the case here.  Any broader reading of the Third Circuit's opinion in *Bell* – for example, the one petitioners offer – collides with the fact that virtually every other circuit has held that a judge has an independent responsibility to assess the reasonableness of claimed fees and costs, whether *vel non* particular items are challenged.[5]  This court has likewise so concluded, doing so, most recently, in rejecting

_____

[5] *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001) ("In fashioning fee awards, the attorneys' contemporaneous billing records constitute the usual starting point, but the court's discretion is by no means shackled by those records.  For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like."); *McDonald v. Pension Plan*, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction 'as a practical means of trimming fat from a fee application,' . . . and the Supreme Court has been careful to note that only those hours 'reasonably expended' are to be awarded.  . . . A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."); *Broyles v. Dir*., 974 F.2d 508, 510 (4th Cir. 1992) ("Although the Director has not challenged the number of hours claimed, we have the responsibility of determining whether the fees sought are *reasonable*, and this requires an examination of whether the hours claimed are *reasonable* when viewed in the light of the question presented, the state of the law, and the experience and expertise of the attorneys." (emphasis in original)); *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir. 1978) (per curiam) ("We agree that the District Court was not bound by the agreement of the parties as to the amount of attorney fees, and we are unable to say that its resolution of the dispute [reducing the $12,000 fee agreement to the $8,231.25 it deemed reasonable] amounted to an abuse of judicial discretion."); *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir. 1986) ("Even where there has been no objection to the size of the attorney's fee requested, it is the responsibility of the court to see to it that the size of the award is reasonable."); *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir. 1980) ("If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands[.]"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002) ("Fee applications [in common fund class action cases] must be closely scrutinized.  Rubber-stamp

the appeal of the denial of another fee request filed by the same counsel.  On that occasion, this court stated that "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and not limited to endorsing or rejecting respondent's critique." *Duncan*, 2008 WL 38954888 at *1; *see also Guy v. Sec'y of HHS*, 38 Fed. Cl. 403, 406 (1997).

In sum, it appears that the Special Master had ample basis upon which to render her findings regarding fees.  In those circumstances, this court cannot subscribe to the notion that, because respondent failed to object to certain items, the Special Master was compelled either to give petitioners a second chance to explain what he should have explained in the first instance or to find that their requests were reasonable, despite obvious indications to the contrary.[6]

III.

Based on the foregoing, the court **DENIES** petitioners' motion for review.  The Special Master's decision is affirmed.  The Clerk is directed to enter judgment accordingly.[7]

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

approval, even in the absence of objections, is improper."); *Case v. Unified Sch. Dist.*, 157 F.3d 1243, 1251 (10th Cir. 1998) ("The district court is not bound by the opinions of the parties regarding the reasonableness of the time they spent on the litigation. . . . To hold otherwise would allow two law firms which, although adversaries in the proceeding, were in agreement in their use of unreasonable billing practices, to force the district court to award compensation it found unreasonable."); *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) ("The court has a duty to independently assess the reasonableness of fees sought from the government and 'we are not prepared to hold that the willingness of a private client to pay a bill necessarily demonstrates that the charge was reasonable under the statutory definition and can therefore be automatically assessed against the government.' Thus, we now undertake an evaluation of the reasonableness of the hours spent on various tasks.").

[6] It is unclear why respondent initially failed to object to the items in question, particularly since it now supports the Special Master's findings.  At oral argument, respondent's counsel hinted that the failure to object earlier might have been based on a desire to avoid satellite litigation.  But, to be fair, she also recognized that respondent has an obligation to challenge items believed to be unreasonable, if for no other reason than to preserve the public fisc.

[7] This opinion shall be unsealed, as issued, after October 8, 2008, unless the parties, pursuant to Vaccine Rule 18(b), identify protected and/or privileged materials subject to redaction prior to said date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for that redaction.